512

## In re REED.

### Patent Appeal No. 4826.

Court of Customs and Patent Appeals.
March 6, 1944.

Leech & Radue, of Washington, D. C. (Francis B. Leech, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

All the claims (19 to 23, inclusive, and 25 and 26) of appellant's application for a patent relating to a steam generator were rejected by the Primary Examiner of the United States Patent Office. Upon appeal to the Board of Appeals, the examiner's decision was affirmed upon the grounds stated by the examiner, and from the decision of the board the applicant has appealed to this court.

Claim 19 is illustrative of the subject-matter involved and reads: "19. In an oil heater of the type comprising a furnace chamber, means to burn a fuel therein, radiantly heated tubes in said chamber, means to circulate oil through said tubes for the pyrolytic conversion thereof, a convection chamber through which the products of combustion pass from the furnace chamber, a multiple-series coil therein, the combination of means to introduce relatively cold water into one end of said coil, means to introduce additional warmer water into an intermediate part of said coil, means to remove a water-steam mixture which is preponderantly water from the other end of said coil, and means to maintain the water proportion in said coil, said warmer water introducing means including a recirculation pump."

The references relied upon are: French patent, 786,653, Sept. 7, 1935; Wallis, 1,945,581, Feb. 6, 1934; Bailey et al., 2,170,345, Aug. 22, 1939.

Appellant's alleged invention involves the production of steam from the waste heat generated in connection with oil refineries. In doing this, he provides a boiler which is stated to be "of the once-through type in the convection bank of an oil heater" and it is provided with a positive water-flow control "so that the discharge is substantially wet, whereby precipitation of solids in the boiler tubes is prevented."

Appellant states that the principal feature of his invention is providing a wet coil in the convection bank of the oil heater and operating it at such a rate that the tubes are adapted to heat the water without completely vaporizing it.

In view of our conclusion, we think it is important to recite the following from appellant's brief: "It is not claimed that this improvement is of basic character or that it has revolutionized the art. It is a simple invention, in a crowded field, that has proved profitable for the refiner to adopt."

Claim 19 was rejected by the Primary Examiner on the patent to Wallis in view of the French patent and the patent to Bailey et al.

The Wallis device is a steam generating system used for the same purpose as that of appellant—the utilization of waste heat in connection with the treatment of oil. Without describing the Wallis structure, it is sufficient to say that it shows substantially all that appellant shows except the particulars which are hereinafter mentioned. Wallis uses a thermo-syphon to cause the circulation of water through

the drum, and the tubes are kept continuously wet.

Bailey et al. show a liquid level control system in a steam generator, and they use a pump in the same relation as Wallis uses the thermo-syphon. They recognized the importance of keeping the tubes wet and so state in their specification.

The French patent was cited by the examiner for the reason that it discloses the use of a pump to return the hot water and accomplish the same purpose as the thermo-syphon system of Wallis.

It will be seen from the foregoing that appellant's idea of saving waste heat made in connection with an oil refinery and utilizing it to make steam for running pumps and the like is old in the art. Appellant, desiring a fast and efficient circulation of the water in order to accomplish the purposes stated, used a pump where Wallis used a thermo-syphon. This was plainly suggested to him by the Bailey et al. and French patents. Wallis taught the importance of keeping the pipes wet and thus avoid incrustation. It is thus seen that every idea of appellant's application which he stresses as of most importance is separately shown in the prior art, and the question occurs as to whether or not the combining of these ideas into a structure such as appellant has produced amounted to invention.

Appellant states that with the exception of Wallis, the art is "non-analogous"; that Wallis is inoperative; that Wallis is a "paper patent"; and that appellant's device has gone into successful commercial use. There is nothing in this record that sustains the view that Wallis is a paper patent and inoperative. There is, to say the least, a very meager showing on the question as to "commercial success" as that term is ordinarily understood in patent law. If it were shown to be a fact that Wallis was inoperative and that it was a paper patent, it would not be, under the circumstances at bar, a controlling consideration. If we were in doubt as to the correctness of the holding of the Board with respect to the appealed claims, we might consider proper evidence relating to commercial success in the operation of appellant's device; but in any event, we find little if anything in the instant record pertinent on that particular question. We cannot agree with appellant that any of the references is in a non-analogous art.

It seems that what appellant has done is nothing more than that which one skilled in the art would do under similar circumstances. If he wanted to utilize waste heat in an oil refinery, by consulting Wallis he could have confirmed his views as to the advisability not only of adopting this system but of keeping the pipes wet. As a skilled mechanic, he might have concluded that the thermo-syphon system for circulating water was less advantageous than the pump of Bailey et al. or of the French patent, so he used the pump. We see nothing inventive over the prior art cited in the structure defined by appellant's claim 19.

The other claims, it seems, all necessarily depend for patentability upon the patentable status of claim 19. The limitations in the remaining claims are clearly not sufficient to make them patentable if claim 19 is rejected for the reasons hereinbefore stated. The limitations of said claims relied upon by appellant are set out and fully discussed in the decisions below. We find no reason for separately stating them and discussing the matter at length. We agree with the conclusion reached by the tribunals below as to the patentable status of all the claims on appeal.

The decision of the Board of Appeals is affirmed.

Affirmed.